No. 19,496.

THE LEGGETT DITCH AND RESERVOIR COMPANY *v.*
PUBLIC SERVICE COMPANY OF COLORADO.
(365 P. [2d] 819)

Decided October 30, 1961.

Mr. DAVID J. MILLER, Mr. ROBERT A. RUYLE, Mr. L. B. FLANDERS, JR., for plaintiff in error.

Messrs. HUTCHINSON and HUTCHINSON, for defendant in error.

*In Department.*

Opinion by MR. CHIEF JUSTICE HALL.

THE parties appear here in the same order as in the trial court. We refer to the Leggett Ditch and Reservoir Company as Leggett and Public Service Company of Colorado as Public Service.

The controversy involves the right of Leggett to store in Valmont Lake Reservoir, 4,573,800 cubic feet (105 acre feet) of water. Trial was to the court which held adversely to Leggett's claim and dismissed its complaint. Leggett is here by writ of error seeking review and reversal.

No adjudicated or unadjudicated right to divert and utilize for beneficial purposes water from the public streams is involved. Various decrees and maps and statements are in evidence and discussed in the briefs but they are important only as they show or fail to show Leggett's rights to storage for 105 acre feet of water in Valmont Lake Reservoir.

The rights and duties of the parties are set forth in a written "Contract for Easement," entered into on September 12, 1924.

On the foregoing date Leggett owned or claimed the Pancost Reservoir with the right to store therein 4,063,-673 cubic feet of water; it also owned or claimed the Leggett Reservoir described in its brief as "Leggett Reservoir or Enlargement of Pancost Reservoir" with a right to store therein 38,226,627 cubic feet, the two rights making a total of 42,290,300 cubic feet.

Public Service owned the Hillcrest Reservoir and on said September 12, 1924, at the time of entering into the foregoing contract, intended to and thereafter did, as authorized by said contract, combine the Hillcrest Reservoir with the Leggett Reservoir, which was a very short distance therefrom, and in so doing submerged the intervening land making but one pond or reservoir called Valmont Lake Reservoir and so named in decrees and filings.

On January 9, 1935, in a general water adjudication proceeding, Leggett sought and was granted a decree

for "Leggett Reservoir First Enlargement with Priority No. 22½," priority date February 1, 1918, capacity 4,573,800 cubic feet or 105 acre feet. Hereinafter we refer to this priority as "No. 22½."

Leggett claims the right to store this 105 acre feet in Valmont Lake Reservoir. The sole purpose of this litigation is to obtain a declaratory judgment so holding.

All of the decrees for the water rights involved were entered subsequent to September 12, 1924, the date of the "Contract for Easement." Public Service, having combined Hillcrest and Leggett, enlarged the total capacity of the two combined reservoirs and assumed, apparently with consent of Leggett, the management and control of the combined reservoirs and refuses to permit Leggett to store therein the 105 acre feet evidenced by "No. 22½."

The Contract for Easement entered into on September 12, 1924, between Leggett and Public Service covers many subjects; the parts thereof pertinent to this litigation are as follows:

"1. The Leggett Company hereby grants to the Power Company, its successors and assigns, an easement and right to overflow and to utilize the said Leggett Reservoir and its dams and said strip of land for the purpose of impounding water therein or thereon and using the same for reservoir purposes, together with the right to overflow the Leggett Outlet Ditch above described, including the right to overflow and utilize the land upon which said Leggett Reservoir is situate and the premises owned and used by said Leggett Company in connection with its said Reservoir, which land is located in Boulder County, Colorado, * * *.

"2. The Power Company (Service) hereby grants to the Leggett Company the right to use and utilize said Valmont Lake for the purpose of impounding and storing water therein to *the extent of a storage capacity of forty-two million two hundred ninety thousand three hundred cubic feet,* subject to the conditions hereinafter stated;

provided, however, that upon and after the entry of a final decree in said adjudication proceedings above mentioned, the storage capacity in said Valmont Lake herein granted to said Leggett Company shall be extended or limited (as the case may be) to the adjudicated storage right capacity now owned by said company in said Leggett Reservoir as fixed and determined by said final decree, * * *. [The proceedings mentioned were a then pending adjudication in Water District No. 6.]

"3. The Leggett Company shall have the right to discharge into and to impound in said Valmont Lake, from time to time as water is available, all water which the Leggett Company may lawfully obtain through said Inlet Ditches above mentioned, or any of them, or through the Inlet Ditches to be constructed by the Power Company as hereinafter provided, subject to the condition that *nothing herein shall be construed as authorizing the Leggett Company to use or utilize the storage capacity of said Valmont Lake for the purpose of impounding therein at any one time any quantity of water exceeding the quantity designated in paragraph two (2) above.*" (Emphasis supplied.)

The foregoing paragraph 2 of the contract clearly defines and limits the storage rights of Leggett. Paragraph 3 is a mere reiteration of the limitations fixed by 2.

■ Leggett under the contract acquired or retained the right to store 42,290,300 cubic feet of water. Significantly this is the precise total volume which was later decreased to Pancost and to Leggett Enlargement.

Leggett's water rights are unquestioned. What Leggett wants is a place to store 105 acre feet of water in Valmont Lake Reservoir in direct violation of the terms of its contract.

It may well be that a storage right for "No. 22½" is essential to its utilization, but Leggett's needs and necessities cannot be employed to limit or govern Public Service's contractual rights. Leggett's need for a right of storage is manifest; equally manifest from the contract

is its lack of right to satisfy this need in Valmont at the expense of Public Service.

On January 9, 1935, as noted, the District Court of Boulder County, in the general adjudication referred to above, entered the decree for "No. 22½." Various recitals are found in the decree; one that the reservoir has capacity as enlarged (by someone) for the additional 105 acre feet. Leggett urges that Public Service Company should have appeared and protested the decree, notwithstanding the contract, as it was a party to the proceedings. In a limited sense it was a party; all claimants to water in a water district might be loosely called "parties" to an adjudication. But all the court could do was fix volume and priority. The court in such proceedings does no more than award *to the diversion or storage means* a stated volume and fixed priority. Public Service takes no exception to "No. 22½"; there was no reason for it to appear or protest.

Had the court in its January 9, 1937, decree attempted to determine ownership (as it in fact did not) the decree would in that respect have been without jurisdiction and void. While beneficial use of the water is essential to a valid decree and usually completion of the diversion and storage means is essential to the beneficial use, nevertheless title and ownership are not involved in any legal sense.

Leggett's decree for "No. 22½" is unquestioned. Its right to use Public Service's storage facilities is limited by the contract of easement and cannot be expanded except by mutual agreement.

The judgment is affirmed.

Mr. Justice Moore and Mr. Justice Frantz concur.